# EXHIBIT A

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------X

SANDRA OLIVER,                                    :
Individually and on Behalf of All Other           :          Civil Index No. _____-2018
Persons Similarly Situated,                       :
                                                  :
                        Plaintiff,                :          **SUMMONS AND**
                                                  :          **COMPLAINT**
            -against-                             :
                                                  :
CAREGUARDIAN, INC., JOSHUA BRUNO,                 :
and JOHN DOES #1-10,                              :
                                                  :
                        Defendants.               :

------------------------------------------------------------------------X

**TO:   CAREGUARDIAN, INC., JOSHUA BRUNO, and AKASH SHAH, 50 West 23rd Street, 9th Floor, New York, N.Y. 10010**

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, or to serve a notice of appearance, if the Complaint is not served with this summons, within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York.  The basis of venue is that Plaintiff and Defendants reside in New York County, New York.

PLEASE TAKE NOTICE that should you fail to serve your Answer within the time prescribed under applicable law, Plaintiffs will take judgment against you by default for the relief demanded in the Complaint pursuant to §3215 of the New York Civil Practice law and Rules.

Dated: New York, New York
      November 18, 2018          By:     s/William C. Rand
                              _____
                              William C. Rand, Esq.
                              LAW OFFICE OF WILLIAM COUDERT RAND
                              501 Fifth Avenue, 15th Floor
                              New York, New York 10017
                              Phone: (212) 286-1425; Fax: (646) 688-3078
                              Attorney for Plaintiff

SUPREME COURT OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------------X

SANDRA OLIVER,                                    :
Individually and on Behalf of All Other           :          Civil Index No. _____-2018
Persons Similarly Situated,                       :
                                                  :
                          Plaintiff,              :
                                                  :          **COMPLAINT**
        -against-                                 :
                                                  :
CAREGUARDIAN, INC., JOSHUA BRUNO,                 :
AKASH SHAH, and JOHN DOES #1-10,                  :
                                                  :
                          Defendants.             :

----------------------------------------------------------------------X

Plaintiff, SANDRA OLIVER, ("Plaintiff" or "OLIVER"), individually and on behalf of

all other persons similarly situated, by and through her attorney, complains and alleges for her

complaint against CAREGUARDIAN, INC., JOSHUA BRUNO, and JOHN DOES #1-10

(together "Defendant" or "Defendants") as follows:

## NATURE OF THE ACTION

1.      Plaintiff and the putative class plaintiffs ("Plaintiffs") were home health aides

who worked numerous 24 hour shifts for which they were illegally paid for only 13 of the 24

hours worked, as they did not get meal breaks and did not get 5 hours of uninterrupted sleep and

a full 8 hours of sleep during the shifts.

2.      During the last 6 years, Plaintiff and the Class worked for Defendants for more

than 40 hours per week ("overtime hours") and were illegally not paid any wages for many of

their hours worked.

3.      During the last 6 years, Plaintiff and the Class worked for Defendants for more

than 40 hours per week ("overtime hours") and were illegally not paid time and one half for the

minimum wage for their overtime hours or time and one half their regular rate.

Case 1:19-cv-02541-VSB   Document 1-1   Filed 03/21/19   Page 4 of 25

4.      Plaintiff complains that Plaintiff and the Class are entitled to back wages from Defendant for (a) hours worked for which they did not receive minimum and/or regular wages, (b) overtime hours worked for which they did not receive time and one half the minimum wage or time and one half their actual wages, including Wage Parity Act minimum wages, and (c) spread of hours worked for which they did not receive an extra hour of pay, as required by the New York Labor Law ("NYLL") §§ 650 *et seq*. and the supporting New York State Department of Labor regulations.

5.      Plaintiff  OLIVER is also individually entitled to damages under the New York Wage Theft Prevention Act because Defendants did not provide proper notices to her.

## JURISDICTION AND VENUE

6.      The court has jurisdiction over this matter because Defendants upon information and belief, reside in New York State, and the Corporate Defendant upon information and belief, is a limited liability company which is licensed in New York State and does business in New York State, and a substantial part of the events or omissions of the individual defendants giving rise to the claims occurred in New York State.  Venue is proper in the County of New York and this Court under CPLR 503 et seq. because Defendants reside in New York County, New York.

## THE PARTIES

7.      Plaintiff OLIVER is an adult individual, residing in New York County in New York State.

8.      Upon information and belief, Defendant CAREGUARDIAN, INC. ("Corporate Defendant"), is a New York corporation with its principal place of business at 50 West 23rd Street, 9th Floor, New York, N.Y. 10010.

9.      Upon information and belief, Defendant JOSHUA BRUNO is an officer and the Chairman of the Board of the Corporate Defendant and owns more than 10% of the Corporate

Case 1:19-cv-02541-VSB    Document 1-1    Filed 03/21/19    Page 5 of 25

Defendant and has owned more than 10% of the corporate Defendant during the last 6 years, and has been one of the ten largest owners of the Corporate Defendant during the time period that the Named Plaintiff worked for the Defendant.

10.     Upon information and belief, Defendant AKASH SHAH is the President of the Corporate Defendant and owns more than 10% of the Corporate Defendant and has owned more than 10% of the corporate Defendant during the last 6 years, and has been one of the ten largest owners of the Corporate Defendant during the time period that the Named Plaintiff worked for the Defendant.

11.     On November 18, 2018, Plaintiff mailed a notice of personal liability under Section 630 et seq. of the New York Corporate Law to  at the address: JOSHUA BRUNO and AKASH SHAH, . CAREGUARDIAN, INC., 50 West 23rd Street, 9th Floor, New York, N.Y. 10010.

12.     Defendants JOSHUA BRUNO  and AKASH SHAH and JOHN DOES #1-10 (the "Individual Defendants") participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

13.     Upon information and belief, during the last six years, the Individual Defendants had authority over the management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendant's home health aide employees and other employees and their decisions directly affected the nature and condition of the home health care employees' employment.

14.     Upon information and belief, during the last six years, the Individual Defendants (1) had the power to hire and fire the home health aide employees of the Corporate Defendant,

(2) supervised and controlled the home health aide employees' schedules and conditions of

employment, (3) determined the rate and method of payment of the home health aide employees,

and (4) maintained employment records related to the home health aide employees.

15.      Upon information and belief, John Does #1-10 represent the officers, directors

and/or managing agents of the Corporate Defendant, whose identities are unknown at this time

and who participated in the day-to-day operations of the Corporate Defendant and acted

intentionally and maliciously and are "employers" pursuant to the New York Labor Law Sec. 2

and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

## STATEMENT OF FACTS

16.      Plaintiff OLIVER was a home health aide/maid employed by Defendants from

about from about June 15, 2017 until the present (the "time period").

17.      During the time period, the Corporate Defendant employed at least 40 home

health aides.

18.      Defendants are an employment agency that sent OLIVER to work as a home

health aide/maid for numerous customers located in New York City.

19.      During the time period, OLIVER maintained her own residence, and did not "live

in" the homes of Defendants' clients or in the home of her employer.

20.      During the time period, OLIVER was not an "exempt companion" of the

Defendants' clients.

21.      While employed by Defendants, OLIVER at times worked more than 40 hours

per week.

22.      OLIVER often worked 24-hour shifts for Defendants during her employment.

23.      When OLIVER worked 24-hour shifts, OLIVER was required to stay overnight at

the residences of Defendants' clients, and needed to be ready and available to provide assistance

to Defendants' clients as needed.

24.     When OLIVER worked 24-hour shifts, OLIVER was not permitted to leave the client unattended.

25.     OLIVER was only paid for approximately 13 hours of her 24-hour shifts.

26.     OLIVER was not paid any hourly rate or any monies for the other 11 hours worked.

27.     OLIVER was generally not permitted to leave the client's residence during her shift.

28.     Because Defendants' clients were often elderly and/or suffering from dementia, OLIVER did not get an opportunity during 24-hour shifts to sleep for eight hours or 5 hours without any interruption.

29.     OLIVER did not get a one-hour break for each of three meals per day during her 24-hour shifts.

30.     OLIVER was often forced to combine her meal times with the meal times of the Defendants' clients because they needed feeding assistance or constant supervision.

31.     OLIVER did not receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which OLIVER worked a spread of more than ten hours.

32.     OLIVER also did not receive minimum wages, including minimum wages under the Wage Parity Act, for all her hours worked and was not paid time and one half the minimum wage rate for her overtime hours and was not paid full time and one half her regular rate for her overtime hours.

33.     Medicaid paid Defendants for some or all of her services and the services of the other similar home health aide employees.

34.     Defendants did not provide to OLIVER and health insurance free of charge.

35.     OLIVER's co-workers performed the same and/or similar work to that of OLIVER and were paid in a similar manner and subject to the same rules and policies ("similar health aides").

36.     The similar health aides did not "live in" the homes of Defendants' clients.

37.     The similar health aides generally worked more than 40 hours per week, but were not paid for every hour that they worked.

38.     The similar health aides were only paid for approximately 13 hours of their 24-hours shifts, and were not paid any hourly rate for the other 11 hours worked.

39.     The similar health aides were generally not permitted to leave the client's residence during their shift.

40.     When the similar health aides worked 24-hour shifts, they were required to stay overnight at the residences of Defendants' clients, and were required to be ready and available to provide assistance to Defendants' clients as needed.

41.     At all relevant times, Defendants have maintained a practice and policy of paying similar health aides for only 13 hours of their 24-hour shifts in violation of New York Labor Law.

42.     At all relevant times, Defendants have maintained a practice and policy of assigning OLIVER and similar health aides to work more than 40 hours per week without paying them one and one half times the basic minimum hourly rate for all hours worked in excess of forty per week, in violation of New York State Labor Law and the Wage Parity Act.

43.     OLIVER and the similar health aides did not receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which we worked a spread of more than ten hours.

44.     Defendants' actions as described herein were intentional and not made in good

faith.

45.    When OLIVER first started to work 24-hour shifts, she complained to her coordinator and to payroll, that she was not able to sleep during the night or get meal breaks but was not being paid for 8 hours of alleged sleep and 3 hours of meal breaks.  They responded that the company did not pay more than 13 hours for a 24-hour shift.

46.    OLIVER  was not able to get 5 hours of uninterrupted sleep or 8 hours of sleep during 24-hour live in shifts because OLIVER generally had to get up at least every four hours to attend to the client, which included among other services, to take the client to the bathroom, to get the client a glass of water, to calm the client when the client awoke in stress, to clean the client's bed when the client urinated or defecated in the bed and/or to change the client's pajamas.

47.    OLIVER also often had to turn patients ever two hours during the night of her 24-hour shifts.

48.    OLIVER also had to stay up at night to prevent patient's with Alzheimer's from trying to leave the home.

49.    OLIVER did not get 8 hours of sleep or 5 hours of uninterrupted sleep because OLIVER was also often forced to sleep in a chair or on a couch that did not have a fold out bed and was often forced to sleep with bed bugs and/or mice and/or cockroaches.

50.    During the time period, OLIVER was not paid full regular wages for all her hours worked and was not paid overtime wages for all of her hours worked over forty in a workweek ("overtime") at time and one half the minimum wage or time and one half the regular wage, and was not paid an extra hour of pay for her hours worked over a spread of 10 hours per day.

51.    During the time period, OLIVER often worked for 24 hours staying overnight at the client's house, and on these days was only paid for 13 hours, despite the fact that her sleep

Case 1:19-cv-02541-VSB    Document 1-1    Filed 03/21/19    Page 10 of 25

was regularly interrupted generally at least 3-4 times by the client throughout the night which prevented her from getting 5 hours of uninterrupted sleep and/or 8 hours of sleep and despite the fact that OLIVER was not given any time off for meal breaks.

52.    OLIVER also generally signed in and out using the client's land line phone.

53.    When OLIVER clocked out, OLIVER generally entered codes showing the types of work that OLIVER had performed.  At times OLIVER filed handwritten time sheets.

54.    During the time period, OLIVER did not receive a meal break because OLIVER was on call or working during her break and regularly interrupted by the client while eating.

55.    During the time period, OLIVER was not paid for all her hours worked and was not paid for her hours worked over 40 hours a week ("overtime hours") at time and one half her regular wages and at times was not paid for all her hours at the minimum wage rate.

56.    During the time period, her job responsibilities as a home health aide/maid included, among others, cleaning the entire house, cooking and doing the laundry.

57.    OLIVER was required to prepare three meals a day, breakfast, lunch and dinner.

58.    Breakfast usually consisted of coffee, eggs, toast, and oatmeal.

59.    Lunch usually consisted of a cooked meal with rice or pasta, beans, and a meat or fish.  Sometimes alternatively OLIVER made a sandwich or mixed vegetables for lunch.

60.    Dinner usually consisted of the similar items as lunch plus soup and desert.

61.    OLIVER was required to prepare whatever foods the customer requested.

62.    OLIVER generally was required to make the beds every morning.

63.    Defendants required  OLIVER to do a number of tasks on a daily basis, including but not limited to: dusting, vacuuming, cleaning the bathroom (including the toilet, tub and shower), mopping the kitchen floors, scrubbing the kitchen counters, cleaning the pots and pans, and taking out the garbage.

Case 1:19-cv-02541-VSB    Document 1-1    Filed 03/21/19    Page 11 of 25

64.    OLIVER generally was required to do the laundry two days per week.

65.    OLIVER spent at least 30% of her time directly performing household work.

66.    During the time period, Defendants hired at least 40 similar home health aides/maids, who also were not paid their overtime at the full time and one half rate.

67.    Throughout the time period, Defendant has likewise employed at least 40 other individuals, like me, in positions as home health aides/maids.

68.    Throughout the time period, such individuals have only been paid for 13 hours of work when they work a 24 hour overnight shift and were not paid for all at their hours worked during 24 hour assignments during which they were not able to get 5 hours of uninterrupted sleep, and have not been paid overtime premium wages of one and one half times their regular hourly rate (or at time and one half the minimum wage rate) for their overtime hours worked.

69.    During the time period, Defendants hired at least 40 other similar home health aides/maids, who also were not paid their overtime at the full time and one half rate or at the time and one half the minimum wage rate.

70.    Throughout the time period, Defendant has likewise employed at least 40 other individuals, like me, in positions as home health aides/maids.

71.    Throughout the time period, such individuals have only been paid for 13 hours of work when they work a 24 hour overnight shift and were not paid for all at their hours worked during 24 hour assignments during which they were not able to get uninterrupted sleep, and have not been paid minimum wages for all hours worked and have not been paid overtime premium wages of one and one half times the minimum wage rate or one and one half times their regular hourly rate for their overtime hours worked.

72.    During the time period, OLIVER and the similar home health aide/maid employees of Defendant were not specifically notified by Defendants of the regular pay day

designated by Defendants, Defendants' name, address and principle place of business and telephone number and our specific rate of pay as required by the New York Wage Theft Prevention Act. OLIVER has not been given any specific notice of this information to sign in English or in any other language and has not signed any such notice.

73.     Upon information and belief the other home health aide employees also were not given such notice.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings all claims for unpaid wages pursuant to CPLR Article 9, to recover unpaid wages, unpaid minimum wages, unpaid Wage Parity Act wages, unpaid overtime pay, unpaid spread of hours pay, and other damages on behalf of all individuals employed as home health aide employees of Defendants in the State of New York, including the health aides who worked twenty-four (24) hour shifts, at any time during the six years (plus any period during which similar class claims were brought in other actions) prior to the filing of the original Complaint in this case as defined (the "Class Period"). All said persons, including Plaintiff, are referred to as the "Plaintiffs" and/or "Class Members" and/or the "Class."

71.     The number, names and addresses of the Class Members are readily ascertainable from the records of the Defendant. The dates of employment and the rates of pay for each Class Member, the hours assigned and worked, and the wages paid to them, are also determinable from Defendant's records. Notice can easily be provided by means permissible under CPLR Article 9.

72.     The proposed Class is so numerous that joinder of all Class Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the precise number of such persons is unknown to Plaintiff and is presently within the sole control of Defendant, Plaintiff believes that the number is over 1,000 and through discovery she will obtain evidence to establish the exact number of Class members.

INDEX NO. 655748/2018
RECEIVED NYSCEF: 11/18/2018

73.     Plaintiff's claims are typical of the claims of the other Class Members, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

74.     All the Class Members were subject to the same corporate practices of Defendant, in that Defendant failed to compensate them for (i) minimum wages for all hours worked as required by 12 N.Y.C.R.R. § 142-2.1 (including time and one half the minimum wage for overtime hours); (ii) overtime premiums for all hours worked over forty (40) in a workweek as required by 12 N.Y.C.R.R. § 142-2.2; and (iii) spread of hours pay as required by N.Y.C.R.R. §§ 142-2.4, 142-2.18.

75.     Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member.

76.     Plaintiff and the other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures caused by Defendant's violations of the NYLL.

77.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.   Plaintiffs has retained experienced employment class action litigation firm.

78.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

79.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the

INDEX NO. 655748/2018
RECEIVED NYSCEF: 11/18/2018

unnecessary duplication of efforts and expense that numerous individual actions engender.

80.     Because the losses, injuries and damages suffered by each of the individual Class Members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

81.     The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

82.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.

83.     The issues in this action can be decided by means of common, class-wide proof.

84.     In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

85.     Upon information and belief, employees of Defendant and similar employers are often afraid to individually assert their rights out of fear of direct or indirect retaliation and former employees are fearful of bringing individual claims because they fear that doing so could harm their employment, future employment, and future efforts to secure employment.

86.     A class action provides Class Members who are not named in the Complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

87. The questions of law and fact common to the Class predominate over any questions affecting only individual Class Members, including: (a) whether Defendant required Class Members to work uncompensated time and failed to compensate the Class Members with the minimum wage for all hours worked as required by 12 NYCRR § 142-2.1, (b) whether Defendant required Class Members to work uncompensated overtime and failed to adequately compensate the Class Members for all overtime hours worked as required by 12 NYCRR § 142-2.2, (c) whether Defendant required Class Members to work a spread of hours in excess of ten (10) hours in a day and failed to adequately compensate the Class Members for "spread of hours" pay.

88. Absent a class action, many of the Class Members likely will not obtain redress of their injuries and Defendant will retain the proceeds of their violations of the NYLL.

89. Plaintiff with regard to her individual claims seeks to recover a penalty, or minimum measure of recovery created or imposed by the New York labor laws.

90. If any claim is certified as a class action, Plaintiff agrees that with regard to such claim she will waive and withdraw any claim to recover a penalty, or minimum measure of recovery created or imposed by any statute applicable to such claim.

### FIRST CAUSE OF ACTION
### New York Labor Law Minimum Wage
### (Brought by Plaintiff, Individually and on Behalf of the Class)

91. Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

92. Title 12 NYCRR § 142-2.1 states that, "(a) [t]he basic minimum hourly rate shall be: (1) $7.25 per hour on and after July 24, 2009; (2) $8.00 per hour on and after December 31, 2013; (3) $8.75 per hour on and after December 31, 2014; (4) $9.00 per hour on and after December 31, 2015 . . . ."

91.     NYLL § 663 provides that, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

92.     At all relevant times to this action, Plaintiffs were Defendants' employees within the meaning of New York Labor Law §§ 190(2) and 651(5) and 12 NYCRR § 142-2.14.

93.     At all relevant times the Defendants were employers of the Plaintiffs within the meaning of New York Labor Laws §§ 190(3) and 651(6).

94.     At all relevant times to this action, Defendants failed to pay Plaintiffs the statutory minimum wage for all hours worked in violation of New York Labor Law § 652 and 12 NYCRR § 142-2.1.

95.     Defendants willfully violated the rights of Plaintiffs by failing to pay them wages due and owing for work performed in violation of New York State Labor Law.

96.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying the required minimum wage rates for all hours worked and overtime premiums for all hours worked in excess of forty (40) hours in any workweek.

97.     Throughout the Class Period, Defendant willfully, regularly, repeatedly and knowingly violated the Plaintiff's and the Class Members' rights by failing to pay them compensation at the required minimum wage rates for all hours worked as well as overtime compensation at the required overtime rates for all hours worked in excess of forty (40) hours per workweek, in violation of the NYLL and its regulations.

98.     As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

99.     Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid minimum wages, in an amount to be determined at trial, plus interest, attorneys' fees pursuant to New York Labor Law §§ 190 et seq., and §§ 650 et seq., and such other legal and equitable relief as this Court deems just and proper.

### SECOND CAUSE OF ACTION
**New York Labor Law Failure to Pay Wages**
**(Brought by Plaintiff, Individually and on Behalf of the Class)**

100.     Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

101.     Pursuant to the Article Six of the New York Labor Law, workers, such as the Plaintiffs are protected from wage underpayments and improper employment practices.

102.     Pursuant to Labor Law § 191 and the cases interpreting same, workers such as Plaintiffs are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

103.     Pursuant to Labor Law § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the putative class members, that is not otherwise authorized by law or by the employee.

104.     Defendants have failed to pay Plaintiffs all wages due, including minimum wages and overtime wages, as well as wages under the NY Home Care Worker Wage Parity Act, for the hours they each worked for Defendants.

105.     By withholding wages and overtime payments for time worked after forty hours in one week from Plaintiffs, pursuant to New York Labor Law § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiffs.

106.     Defendants' failure to comply with the NYLL caused Plaintiffs to suffer loss of wages and interest thereon.

107.    Defendants' failure to comply with the NYLL was willful.

108.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid wages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### New York Labor Law Overtime Wages
### (Brought by Plaintiff, Individually and on Behalf of the Class)

109.    Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

110.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work more than 40 hours in a workweek ("overtime hours") without paying the required overtime wages for the overtime hours worked.

111.    Throughout the Class Period, Defendant willfully, regularly, repeatedly and knowingly violated the Plaintiff's and the Class Members' rights by failing to pay them compensation at the required overtime compensation at the required overtime rates for all hours worked in excess of forty (40) hours per workweek, in violation of the NYLL and its regulations.

112.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

113.    Due to Defendant's NYLL violations, Plaintiff, on behalf of herself and the Class Members, seeks damages in the amount of their respective unpaid overtime compensation, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the NYLL, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### New York Labor Law Failure to Pay Spread of Hours Wages
### (Brought by Plaintiff, Individually and on Behalf of the Class)

114.    Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all previous paragraphs.

115.    Plaintiff and the Class Members regularly ended their workday more than ten (10) hours after the beginning of their workday.

116.    Throughout the Class Period, Defendant willfully and intentionally failed to compensate Plaintiff and the Class Members additional compensation of one hour's pay at the basic New York minimum hourly wage rate for each day that the interval between the beginning and end of their workday was greater than ten (10) hours, as required by the NYLL and implementing regulations.

117.    By virtue of Defendant's failure to pay Plaintiff and the Class Members spread-of-hours pay, Defendant has violated the NYLL and its regulations.

118.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the Class Members have sustained damages, including loss of earnings, in an amount to be established at trial.

119.    Due to Defendant's NYLL violations, Plaintiffs, on behalf of themselves and the Class Members, seek damages in the amount of their respective unpaid spread of hours wages, pre-judgment and post-judgment interest, attorneys' fees and costs, pursuant to the NYLL, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Failure to pay Wage Parity Act Minimum Wages
### (Brought by Plaintiff, Individually and on Behalf of the Class)

120.    Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth again herein.

121.    Plaintiff and the putative class members are "Home Care aides" within the meaning of NY Public Health Law § 3614-c.

122.    Defendants are "certified home health agencies," "long term home health care programs," "managed care plans" and/or "licensed home care services agencies" that furnish "home care aide" within the meaning of NY Public Health Law § 3614-c

123.    Upon information and belief, Defendants entered into contract(s) with government agencies which called for Defendants to pay Plaintiffs prevailing rates of wages and benefits as required by NY Public Health Law § 3614-c.

124.    Upon information and belief, the schedule of prevailing rates of wages and benefits to be paid all workers furnishing labor pursuant to the contracts was included in and formed a part of the contract(s).

125.    Plaintiff and the putative class members furnished labor to Defendants in furtherance of Defendants' performance of the contract(s).  Nevertheless, Defendants willfully paid Plaintiffs less than the prevailing rates of wages and benefits to which Plaintiffs were entitled.

126.    The agreement to pay Plaintiff and the Class the prevailing rates of wages and benefits as required by NY Public Health Law § 3614-c was made for the benefit of Plaintiffs.

127.    Pursuant to NY Public Health Law § 3614-c, governmental agencies "must obtain a written certification from the licensed home care services agency or other third party, on forms prepared by the department in consultation with the department of labor, which attests to the licensed home care services agency's or other third party's compliance with the terms of this section.  Such certifications shall also obligate the certified home health agency, long term home health care program . . . to obtain . . . on no less than a quarterly basis, all information from the licensed home care services agency or third parties necessary to verify

compliance with the terms of this section. Such certifications and the information exchanged pursuant to them shall be retained by all certified home health agencies, long term home health care programs, or managed care plans, and all licensed home care services agencies, or other third parties for a period of no less than ten years, and made available to the department upon request."

128.   Upon information and belief, Defendants made the required certifications concerning compliance with the wage provisions of NY Public Health Law § 3614-c.

**SIXTH CAUSE OF ACTION**
**(Breach of Contract –Third Party Beneficiaries of Wage Parity Act Contract**
**With New York State)**

129.   Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

130.   Upon information and belief, at all times relevant to this complaint, Defendant was required to certify and did certify that they paid Plaintiff and members of the Class wages as required by NY Health Care Worker Wage Parity Act.

131.   The agreement to pay Plaintiff and the Class wages as required by the NY Health Care Worker Wage Parity Act was made for the benefit of the Plaintiff and the Class.

132.   Defendant breached their obligation to pay Plaintiff and the Class all wages they were due as required by the NY Health Care Worker Wage Parity Act and as a result Plaintiffs and members of the Class were injured.

133.   Plaintiff and the Class, as third party beneficiaries of Defendants' contract with government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act, and as persons protected by the NY Health Care Worker Wage Parity Act are entitled to relief for the breach of this contractual obligation and the violation of this Act, plus interest.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)
### (Brought by Plaintiff Individually and on Behalf of the Class)

134.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

135.     Defendants are liable to the Plaintiff and the Class under the common law doctrine of "unjust enrichment."

136.     Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiff and the Class: (1) all wages due for work performed; (2) an extra hour at the minimum wage for working a "spread of hours" in excess of 10 hours or a shift longer than 10 hours; and (3) all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act.

137.     Defendant accepted and received the benefits of the work performed by Plaintiff and the Class at the expense of Plaintiff and the Class.  It is inequitable and unjust for Defendants to reap the benefits of Plaintiff's and the Class's labor, without paying all wages due, which includes but is not limited to all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act, regular hours caring for the clients of Defendants, and failing to pay for required trainings, uniform expenses, and the pay due for spread of hours.

138.     Plaintiff and the members of the Class provided services to Defendants for which Defendants understood that they were obligated to pay wages.

139.     Defendants did not pay wages for the services provided by Plaintiffs.

140.     Defendants were unjustly enriched at the expense of Plaintiffs.

141.     Plaintiff and the Class are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendant, plus interest on these amounts.

## EIGHTH CAUSE OF ACTION
### Breach of Contract-Failure to Pay Wages
### (Brought by Plaintiff, Individually and on Behalf of the Class)

142.    Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth again herein.

134.    Plaintiff and the Class entered into employment contracts with Defendants under which Plaintiffs agreed to provide home health aide services and Defendants agreed to pay wages.

135.    Plaintiff and the class satisfied their obligation to provide home health aide services under the contracts.

136.    Defendants breached the contracts by failing to pay wages to Plaintiff and the Class as required by the contracts and as required by the New York labor law.

137.    Plaintiffs and the Class suffered material damages as a direct result of Defendants' breach of the contracts.

138.    Accordingly, Plaintiff and the Class now see judgement in the amount of their unpaid wages.

## NINTH CAUSE OF ACTION
### (Notice & Wage Statement Violations – NYLL §195, Brought by Plaintiff Individually)

143.    Plaintiff, individually, realleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth again herein.

144.    Defendant has willfully failed to supply Plaintiff with the notice required by NYLL § 195(1), in English or in the languages identified by Plaintiff as their primary languages, containing their "rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with

22

[NYLL §191]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such

145.     other information as the commissioner deems material and necessary."

146.     Defendant has willfully failed to supply Plaintiff with an accurate statement of wages as required by NYLL § 195(3), containing the "dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

147.     Due to Defendant's violations of the NYLL§ 195(1), Plaintiff is entitled to $50 dollars for each workday in which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

148.     Due to Defendant's violations of the NYLL § 195(3), Plaintiff is entitled to recover from Defendant $250 for each workday on or after April 9, 2011, on which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-d.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all other similarly situated members of the Class, respectfully requests that this Court grant the following relief:

a.   Certification of this action as a class action pursuant to Article 9 of the CPLR on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b.   An order tolling the statute of limitations;

    c.   An award of unpaid wages, spread of hours wages, overtime wages and minimum wages and statutory and punitive damages due under the New York Labor Law and New York common law;

    d.   An award of prejudgment and post judgment interest;

    e.   An award of costs and expenses of this action together with reasonable attorney's fees; and

    f.   Such further relief as this Court deems just and proper.

Dated: New York, New York
       November 18, 2018

                      LAW OFFICE OF WILLIAM COUDERT RAND

                      _____

                      William Coudert Rand, Esq.
                      *Attorney for Plaintiff*, Individually and on
                      Behalf of All Persons Similarly Situated
                      501 Fifth Avenue, 15th Floor
                      New York, New York 10017
                      Tel: (212) 286-1425; Fax: (646) 688-3078
                      Email: wcrand@wcrand.com

24